IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:20cr14

ANTONIO M. SMITH,
Defendant.

**MEMORANDUM OPINION**
**(Denying Defendant's Motion for Compassionate Release)**

On April 10, 2020, Defendant Antonio M. Smith ("Defendant") pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On October 6, 2020, the undersigned sentenced Defendant to 48 months' imprisonment, 3 years' supervised release and a $100 special assessment.

This matter now comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 47), which moves pursuant to 18 U.S.C. § 3582(c)(1)(A) for Defendant's release in light of his medical conditions, age and the outbreak of Coronavirus Disease 2019 ("COVID-19"). For the reasons set forth below, the Court hereby DENIES Defendant's Motion (ECF No. 47).

## I. BACKGROUND

### A. Defendant's Underlying Offense

On or about September 15, 2019, officers responded to a call by a leaseholder requesting Defendant's removal from a premises in Richmond, Virginia. (October 1, 2020, Presentence Investigation Report ("PSR") (ECF No. 40) ¶ 7.) As officers approached the premises, Defendant was standing on the front porch. (PSR ¶ 7.) However, he quickly entered the home

and exited through the back door. (PSR ¶ 7.) Despite police commands to stop, Defendant then proceeded to the front of the residence and threw firearms through an open passenger window of an occupied vehicle parked on the street. (PSR ¶ 7.) An officer later located two firearms in the vehicle, including a Ruger .380 caliber semi-automatic pistol. (PSR ¶ 7.) Defendant knew that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. (PSR ¶ 7.)

### B. Procedural History

On February 5, 2020, the Court issued an arrest warrant for Defendant, and Defendant made his initial appearance on February 14, 2020. (ECF Nos. 4, 7.) On April 10, 2020, Defendant pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Plea Agreement (ECF No. 28) at 1.) On October 6, 2020, the undersigned sentenced Defendant to 48 months' imprisonment, 3 years' supervised release and a $100 special assessment. (ECF No. 43.)

### C. Defendant's Motion for Compassionate Release

At the time Defendant began serving his sentence, the first cases of COVID-19 had already emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus*, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19). In response to the rising number of cases of COVID-19 in the United States, on January 15, 2021, Defendant moved for compassionate release pursuant to § 3582(c)(1)(A). (Mem. in Supp. of Mot. For Compassionate Release ("Def.'s Mot.") (ECF No. 47) at 1-2.)

In support of his Motion, Defendant argues for early release, because his age and medical conditions render him particularly susceptible to COVID-19. (Def.'s Mot. at 1-2.)

Specifically, Defendant avers that he suffers from hypertension, renal function decline and cervical disc degeneration at C5-C6, which he maintains increases the likelihood of COVID-19 complications should he contract the disease. (Def.'s Mot. at 1-2.) Defendant further contends that he has a particularized risk of contracting COVID-19, because the Bureau of Prisons ("BOP") facility that houses Defendant has reported incidences of the disease, and the conditions of confinement at the facility make it unlikely that the facility will contain the pandemic and prevent the spread of COVID-19 to inmates like Defendant. (Def.'s Mot. at 2, 17.) Specifically, Defendant notes that FCI Petersburg Medium, where BOP currently houses Defendant, had 69 inmates and 6 staff members currently positive with COVID-19 at the time that Defendant filed his Motion. (Def.'s Mot. at 20.) One inmate had died. (Def.'s Mot. at 20.) Defendant argues that the conditions of confinement at the facility prevent inmates, including Defendant, from following CDC guidelines for preventing the spread of the virus such as social distancing, increased personal hygiene, sanitizing their environments and avoiding exposure to large groups. (Def.'s Mot. at 20.)

As for whether his release comports with the relevant § 3553(a) factors and policy statements, Defendant argues that he will not present a danger to the community if released, and that he can comply with the conditions of his release. (Def.'s Mot. at 23.) While Defendant acknowledges his criminal history, including an arrest and conviction for murder when he was 18 years old, he notes that he played a limited role in this offense and that he has evolved as an individual since that time. (Def.'s Mot. at 24-25.) Defendant also argues that, according to the Sentencing Commission, his age, 53 years old, indicates that he presents a lower recidivism risk. (Def.'s Mot. at 25.)

Finally, Defendant argues that he has a viable release plan, which involves living with his brother Andre Smith who lives in Henrico, Virginia. (Def.'s Mot. at 26.) Defendant's nephew also lives in the home. (Def.'s Mot. at 26.) Andre Smith currently lives off of the proceeds of the towing business that he sold as a result of the pandemic. (Def.'s Mot. at 26.) Defendant also maintains that he has a job waiting for him upon his release. (Def.'s Mot. at 26.)

The Government filed its Response to Defendant's Motion on January 29, 2021, (Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 53)). Defendant filed his Reply in Support of Compassionate Release on February 5, 2021 (Def.'s Reply in Supp. of Compassionate Release ("Def.'s Reply") (ECF No. 54), rendering the matter now ripe for review.

## II. STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g., Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to

4

exhaust administrative remedies may be excused if seeking administrative remedies would be futile").

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) (considering what the Sentencing Guidelines defined as "extraordinary and compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D).

However, these policy statements also provide that to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver.

5

§ 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age and family circumstances]." § 1B1.13, application note 1(D).

The Fourth Circuit has recently clarified that because § 1B1.13 was adopted before the First Step Act, application note 1(D) does not directly apply to motions brought by defendants. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Therefore, application note 1(D) does not operate to constrain the discretion of district courts, and instead, courts should "make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]'under § 3582(c)(1)(A)." *Id.* at 284. The Fourth Circuit noted that § 1B1.13 "remains helpful guidance when motions are filed by defendants," and emphasized that still "only those defendants who can meet the heightened standard of 'extraordinary and compelling reasons' may obtain relief." *Id.* at 282 n.7, 287. Thus, application note 1(D) remains a helpful starting place when determining what circumstances warrant compassionate release, but the Court is not bound by the specific situations contemplated therein in making this determination.

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* (*Feiling I*), 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 451 F. Supp. 3d 562, 567 (W.D. Va. 2020)). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling* (*Feiling II*), 2020 WL 5047064, at *7 (E.D. Va.

6

Aug. 26, 2020). However, even then, "COVID-19 and an inmate's susceptibility to it do not justify compassionate release when . . . the inmate refuses additional protections afforded to him by the BOP without good cause and continues to voluntarily place himself in an environment in which he faces the highest risk of contracting the disease." *Id.*

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1)-(2). Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released.[1] U.S.S.G.

---

[1] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical or mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

§ 1B1.13(2). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not undermine the relevant § 3553(a) factors or any relevant policy statements issued by the Sentencing Commission.

### III. ANALYSIS

#### A. Defendant Does Not Demonstrate that Extraordinary and Compelling Reasons Entitle Him to Compassionate Release.

Defendant must show that his circumstances present "extraordinary and compelling reasons" entitling him to compassionate release. Defendant argues that the heightened risk of contracting COVID-19 in prison coupled with his age and preexisting health conditions could result in severe illness or death. (Def.'s Mot. at 11-14.) Defendant contends that his hypertension, renal function decline and cervical disc degeneration at C5-C6 puts him at risk of developing more severe symptoms should he contract the disease. (Def.'s Mot. at 12, 14.)

In response to Defendant's Motion, the Government argues that Defendant has not established extraordinary and compelling reasons entitling him to compassionate release. (Gov't Resp. at 7.) Specifically, the Government contends that Defendant has established neither a particularized susceptibility to COVID-19, nor a heightened risk of contracting the disease at his prison facility. (Gov't Resp. at 7.) The Government distinguishes between individuals who "are at increased risk" and those who "might be at an increased risk," noting that the CDC has said that individuals like Defendant with hypertension merely "might be at an increased risk for severe illness" from COVID-19. (Gov't Resp. at 12.) Moreover, Defendant receives medical

8

treatment to manage this condition, a factor that courts have found defeats a finding of "particularized susceptibility" to COVID-19. (Gov't Resp. at 12.) Additionally, Defendant's claim of renal function decline does not place him in either risk category according to the CDC. (Gov't Resp. at 12.) While the CDC recognizes chronic kidney disease as posing an increased risk of severe illness, the Government argues that no evidence or diagnosis suggests that Defendant suffers from either renal function decline or chronic kidney disease. (Gov't Resp. at 13.)

As a threshold matter, neither party contends that Defendant has failed to exhaust his administrative remedies under § 3582(c)(1)(A). Indeed, Exhibit 1 to Defendant's Motion shows that the warden at FCI Petersburg received Defendant's request for compassionate release on November 29, 2020, and that the warden responded with a denial letter on December 11, 2020. (Ex. 1 to Def.'s Mot. (ECF No. 47-1) at 1.) Accordingly, the Court finds that Defendant has exhausted the administrative remedies outlined under § 3582(c)(1)(A) and that the Court has jurisdiction to consider the merits of Defendant's Motion.

To that end, the Court finds that Defendant has not established an extraordinary and compelling reason for his release. As mentioned, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling I*, 453 F. Supp. 3d at 841 (citations omitted). Here, Defendant has not made the initial showing of a particularized susceptibility to COVID-19, nor has he demonstrated a particularized risk of contracting the disease.

To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for

Disease Control and Prevention ("CDC") as a COVID-19 risk factor. *See, e.g., United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). However, the CDC distinguishes between adults who "*are* at an increased risk of severe illness" from COVID-19 due to their condition, and those who "*might* be at an increased risk for severe illness." CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021), (emphasis added). While chronic kidney disease appears on the former list, hypertension appears on the latter. Courts have found that this distinction "casts doubts on whether [a condition on the "might" list] could support a finding of particularized susceptibility." *United States v. Weaver*, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020).

Importantly, courts have found that certain conditions, including hypertension, generally do not establish a "particularized susceptibility" to COVID-19 absent evidence that these individuals also suffer from other underlying medical conditions. *See, e.g., United States v. Harper*, 2020 WL 2046381, at *1 (W.D. Va. Apr. 28, 2020) (granting compassionate release where inmate suffered from heart disease, asthma, hypertension, emphysema and sleep apnea); *United States v. Galloway*, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (granting compassionate release where inmate suffered from Type II diabetes, hepatitis B, hypertension, thyroid disorder and gastritis). Indeed, "[h]ypertension, or high blood pressure, a condition that the CDC estimates impacts 43.8% of the United States adult population, alone does not

10

constitute an 'extraordinary and compelling reason.'" *United States v. Thomas*, 471 F. Supp. 3d 745, 749 (W.D. Va. 2020).

Additionally, certain conditions do not constitute extraordinary or compelling reasons "absent some evidence of a diminution in the defendant's health." *United States v. Prater*, 2021 WL 54364, at *5 (E.D. Va. Jan. 6, 2021). Where the BOP administers medical treatment to manage a defendant's hypertension and the defendant exhibits no evidence of a diminution in health, courts have found that this condition does not establish a particularized susceptibility to COVID-19. *See United States v. Reid*, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020) (finding that defendant failed to establish particular susceptibility when BOP prescribed defendant multiple medications to treat his hypertension, and defendant chose not to take them); *Barrett v. United States*, 2020 WL 6206008, at *3 (E.D. Va. Oct. 22, 2020) (finding that "hypertension alone, when coupled with Petitioner's current age and medical treatment to manage his condition, does not place him at increased risk for serious illness if he contracts COVID-19").

Finally, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 453 F. Supp. 3d at 841 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification." (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (emphasis added))).

In the instant case, Defendant argues that he has a particularized susceptibility to COVID-19 due to his age, hypertension, renal function decline and cervical disc degeneration.

11

However, the Court's review of Defendant's health records reveals that Defendant's conditions prove not so severe as to establish his particularized susceptibility to COVID-19.

Defendant met with a BOP medical provider on November 17, 2020. (Bureau of Prisons Health Servs. Rec. ("Med. R.") (ECF No. 51-1) at 1.) The doctor noted that Defendant had "been on an ACEI for awhile" to treat his hypertension. (Med. R. at 1.) Based on Defendant's complaints, the doctor increased Defendant's dose to 20 mg. (Med. R. at 3.) The doctor also noted Defendant's request for a bottom bunk due to his degenerative disc issues, and she stated that she would re-evaluate the issue in 90 days. (Med. R. at 1.) Defendant later received permission to sleep on a lower bunk on December 9, 2020. (Med. R. at 29.) The medical records contain no other substantive notes regarding Defendant's degenerative disc condition or the issues that this condition creates for Defendant. Additionally, after the November 17 evaluation, the doctor noted that Defendant had no other physical complaints aside from the hypertension. (Med. R. at 1.) The records contain no additional evidence as to the effect of Defendant's hypertension on his functioning or complaints regarding the efficacy of the treatment provided. Indeed, it appears from these records that Defendant received the appropriate treatment for his condition, and that BOP could adequately manage it. Therefore, Defendant's hypertension alone proves not so severe, debilitating or unmanageable as to warrant a finding of particularized susceptibility to COVID-19.

Additionally, the evidence of Defendant's renal function decline proves too sparse to determine whether this condition, in combination with Defendant's hypertension, establishes a particularized susceptibility to COVID-19. While Defendant's medical records note that Defendant has a medical history of renal disease, the medical records contain little other mention of this disease and its effect on Defendant's quality of life. (Med. R. at 61.) Defendant points to

12

his most recent labs from FCI Petersburg, dated December 21, 2020, which state that Defendant had an eGFR calculation of 57. (Med. R. at 43.) As stated in the laboratory report, a calculated GFR of less than 60 suggests a chronic kidney disease if found over a three-month period. (Med. R. at 43.) However, Defendant has yet to be tested again or diagnosed with any condition that suggests chronic kidney failure. Given these limited findings and the records' acknowledgement that it will take several months to determine if evidence actually exists of a decline in Defendant's kidney function, the Court cannot conclude that Defendant has established a particularized susceptibility to COVID-19 due to this condition.

Additionally, Defendant has not shown a particularized risk of contracting COVID-19 at his prison facility. As of February 17, 2021, FCI Petersburg Medium has two currently positive cases of COVID-19 among its inmate population, and thirteen positive cases among its staff. This marks a decline since Defendant filed his Motion a month ago. (Def.'s Mot. at 20.) "These figures indicate that the situation . . . is improving, not deteriorating. As such, Defendant is unable to convincingly allege a 'particularized risk' of contracting COVID-19 at this time." *United States v. Day*, 474 F. Supp. 3d 790, 806 (E.D. Va. 2020). While the numbers certainly could increase once again, these figures currently indicate that the facility has found ways to manage the spread of the virus, despite the alleged inadequacies in its health and safety protocols.

For these reasons, Defendant has not established that "extraordinary and compelling reasons" entitle him to compassionate release.

### B. The Court Finds that the § 3553(a) Factors Do Not Support Defendant's Release.

The Court also finds that the § 3553(a) factors do not support Defendant's release. In support of his Motion, Defendant argues that he will not present a danger to the community if

13

released and that he can comply with the conditions of his release. (Def.'s Mot. at 23.) Defendant further contends that he has a viable release plan, which includes living with his brother and nephew in Henrico, Virginia. (Def.'s Mot. at 26.) Defendant maintains that he has a job waiting for him upon his release. (Def.'s Mot. at 26.) Defendant also notes how the lack of guidance in his childhood and the violence that he witnessed growing up have shaped the trajectory of his life. (Def.'s Mot. at 23.)

The Government argues that the § 3553(a) factors do not support Defendant's release. (Gov't Resp. at 16.) The Government asserts that the seriousness of the instant offense weighs heavily against release — Defendant possessed two loaded firearms and tossed them into an occupied vehicle after fleeing from police. (Gov't Resp. at 17.) The Government also contends that Defendant's criminal history further underscores that the sentencing factors do not support Defendant's release. (Gov't Resp. at 17.) Specifically, Defendant's criminal conduct began at an early age and only escalated when Defendant turned 18, at which time he pled guilty to murder and use of a firearm during a murder. (Gov't Resp. at 17-18.) Additionally, Defendant has already incurred another conviction for possession of a firearm by a convicted felon. (Gov't Resp. at 18.) Defendant committed the instant offense less than two months after the end of his supervised release for that offense. (Gov't Resp. at 18.) The Government contends that this history evinces a serious risk of recidivism. (Gov't Resp. at 18.)

The Government also notes that the Court imposed a sentence of 48 months' imprisonment for the instant offense, a sentence already below the advisory guideline range. (Gov't Resp. at 19.) Any further reduction in Defendant's sentence would fail to promote respect for the law, especially because Defendant has served less than half of his 48-month sentence. (Gov't Resp. at 19.) Finally, the Government argues that Defendant's release plan

will not adequately protect against recidivism, because of Defendant's brother's criminal history. (Gov't Resp. at 21.)

The Court agrees with the Government and finds that the relevant § 3553(a) factors do not support Defendant's compassionate release. Defendant's instant offense follows an extensive criminal history, which began at age 13. (PSR ¶ 24.) At 18 years old, Defendant was sentenced to 48 years' imprisonment for murder after Defendant waited in the car while his cousin and two other individuals entered the home of a woman, demanded marijuana and money from her and then shot her when she denied having either. (PSR ¶ 27.) Defendant spent approximately 25 years in state prison for this offense. (PSR ¶ 27.) Approximately a year and a half after Defendant was discharged from parole for that offense, Defendant incurred a new conviction for possession of a firearm by a convicted felon. (PSR ¶ 28.) Defendant received a sentence of 24 months' imprisonment and 3 years' supervised release. (PSR ¶ 28.) On July 17, 2019, Defendant was discharged from supervised release for that offense. (PSR ¶ 28.) Defendant committed the instant offense just two months later. (PSR ¶ 1.) This criminal history, especially the multiple firearm-related offenses, and the fact that Defendant committed the instant offense immediately after his release from supervision on an identical offense, evinces a lack of respect for the law and an inability to learn from his past. Defendant's plan for release does little to influence this analysis, especially given that the brother with whom he hopes to reside only four years ago completed a period of supervised release after serving a 210-month sentence for a drug trafficking crime. (PSR ¶ 56.)

Additionally, Defendant has not yet served even half of his total sentence. (Compassionate Release Recommendation (ECF No. 52) at 1.) Given that Defendant already received a sentence below the applicable guideline range, releasing Defendant now would run

15

contrary to the statutory sentencing goals of promoting respect for the law and avoiding unwarranted disparities among defendants with similar records.

Together, both the nature and circumstances of Defendant's underlying offense and his criminal history weigh against his release. Ultimately, even if extraordinary and compelling reasons did exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct or reflect the seriousness of Defendant's offense. Accordingly, the Court DENIES Defendant's Motion for Compassionate Release.

### IV.  CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for Compassionate Release (ECF No. 47). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 22, 2021